UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRANDON ALVES, <br> NICHOLAS BERNAT, and <br> NATHAN PIERCE, <br> <br>     Plaintiffs, <br> <br> v <br> <br> DONNA M. MCNAMARA, <br>     in her official capacity as Police <br>     Chief of the Town of Stoughton , <br> RICHARD FULLER, <br>     in his official capacity as the Chief <br>     of Police of Weymouth, <br> BRANVILLE G. BARD, JR., <br>     in his official capacity as Police <br>     Commissioner for the City of <br>     Cambridge, <br> <br>     Defendants. | |

## COMPLAINT

Plaintiffs allege as follows:

1. This lawsuit challenges the Defendant's acts of refusing to process firearms license applications during the COVID-19 State of Emergency, declared by the Governor of Massachusetts.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

3. This Court has personal jurisdiction over the Defendant because he has acted, acts and threatens to act under the color of laws, policies, customs and/or practices of the Commonwealth of

    Massachusetts and each did so, does so and threatens to do so within the geographic confines of the Commonwealth of Massachusetts.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

5. The Eastern Division is appropriate pursuant to LR 40.1(d)(1)(C) because all parties that reside in the District reside in the Eastern Division.

## PARTIES

6. Plaintiff Brandon Alves ("Mr. Alves") is a natural person residing in Stoughton, Norfolk County, in the Commonwealth of Massachusetts.

7. Plaintiff Nicholas Bernat ("Mr. Bernat") is a natural person residing in Weymouth Norfolk County, in the Commonwealth of Massachusetts.

8. Plaintiff Nathan Pierce ("Mr. Pierce") is a natural person residing in Cambridge, Middlesex County, in the Commonwealth of Massachusetts.

9. Defendant Donna M. McNamara ("Chief McNamara") is sued in her official capacity as Police Chief of the Town of Stoughton, responsible for general law enforcement functions within the town of Stoughton, including administration of Firearms Licensing, with a business address of Stoughton Police Department, 26 Rose Street, Stoughton, MA 02072.

10. Defendant Richard Fuller ("Chief Fuller") is sued in his official capacity as the Chief of Police of Weymouth, responsible for general law enforcement functions within the Town of Weymouth, including administration of Firearms Licensing with a business address of Weymouth Police Department, 140 Winter Street, Weymouth, MA 02188.

11. Defendant Branville G. Bard, Jr. ("Commissioner Bard") is sued in his official capacity as Police Commissioner for the City of Cambridge Police Department responsible for general law

enforcement functions within the City of Cambridge, including administration of Firearms Licensing with a business address inside the Robert W. Healy Public Safety Facility at 125 6th Street, Cambridge, MA 02142.

## CONSTITUTIONAL PROVISIONS

12. The Second Amendment to the United States Constitution provides: A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

13. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." District of Columbia v. Heller, 554 U.S. 570, 592 (2008).

14. The Fourteenth Amendment to the United States Constitution provides in pertinent part: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

15. The Second Amendment "is fully applicable to the States." McDonald v. City of Chicago, 561 U.S. 742, 750 (2010); see also id. at 805 (Thomas, J., concurring)

16. The "core lawful purpose" of the right to keep and bear arms is "self-defense." Heller, 554 U.S. at 571, 630; accord McDonald, 561 U.S. at 767-68.

17. The Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Heller, 554 U.S. at 635.

## PERTINENT STATUTES AND REGULATIONS

18. It is unlawful to "own or possess" any handgun, rifle or shotgun unless one holds either a Firearms Identification card ("FID") or a License to Carry Firearms ("LTC"). See M.G.L. c. 140, §§ 129B-129C; id. c. 269, § 10(a,h).

19. It is also illegal to possess "ammunition" unless one holds either a FID or LTC. See M.G.L. c. 140, §§ 129B-129C; id. c. 269, § 10(h).

20. A person seeking a FID or LTC must meet specified requirements related to, inter alia, age, criminal background, and mental fitness. See M.G.L. c. 140, § 129B(1)(i)-(xi); id. § 131(d)(i)-(x). Furthermore, licensing authorities can deny FIDs and LTCs to individuals found to be "unsuitable" in that they otherwise "create a risk to public safety." See id. § 129B(1)(b), (d); id. § 131(d). Finally, a person must also complete state mandated training. See id. at § 131P(a).

21. As a general proposition, it is illegal to sell any type of firearm (handgun, rifle or shotgun) in Massachusetts unless the seller is a licensed firearms dealer. See M.G.L. c. 140, § 128.

22. If is unlawful for any person to sell a handgun to any person without a License to Carry Firearms or both an FID Card and a Permit to Purchase. See M.G.L. c. 140, § 129C.

23. On information and belief, the Commonwealth of Massachusetts has not issued a Permit to Purchase in over 20 years.

24. Persons seeking a License to Carry or FID Card may submit an application to the local licensing authority. *See* M.G.L. c. 140, §131(d), §129B(1)

25. There are no provisions in the law that permit a licensing authority to refuse to accept and process firearms license applications.

26. The licensing statute requires the licensing authority to forward one copy of the application and one copy of the applicant's fingerprints to the colonel of state police within seven days of the

receipt of a completed application. See M.G.L. c. 140, §131(e), §129B(2).

27. The licensing statute requires the colonel of the state police to advise the licensing authority within 30 days of any disqualifications to licensing. See M.G.L. c. 140, §131(e), §129B(2).

28. On information and belief, the Firearms Records Bureau ("FRB") acts as the agent of the colonel of the state police with regards to firearms licensing processing.

**29.** The licensing statute requires the licensing authority to process an application within 40 days. *See* M.G.L. c. 140, §131(e), §129B(2).

## GOVERNOR BAKER'S EXECUTIVE ORDERS

30. In March of 2020, Massachusetts Governor Charles Baker declared a state of emergency in response to the COVID-19 pandemic and subsequently issued orders which forcing "[a]ll businesses and other organizations that do not provide COVID-19 Essential Services [to] close their physical workplaces and facilities ('brick-and-mortar premises') to workers, customers, and the public". Since that time various steps have been taken to reopen businesses and other organizations.

**31.** Nothing in the Governor's COVID orders require or permit a licensing authority to refuse to accept and process firearms license applications.

## INJURY TO PLAINTIFF BRANDON ALVES

32. Mr. Alves contacted the Stoughton Police department on January 20, 2020, to make an appointment to submit his LTC application.

33. In February of 2020, Mr. Alves submitted his completed application to the Stoughton Police Department and was fingerprinted.

34. On May 7, 2020, Mr. Alves contacted the Stoughton Police Department to inquire of the status of his LTC application. He was told the process was delayed due to the Coronavirus.

35. On June 13, 2020, Mr. Alves contacted the Stoughton Police Department to inquire of the status of his LTC application. He was told to call back when the Chief McNamara was available, and that the Coronavirus was to blame for the delay in processing licenses.

36. On June 19, 2020, Mr. Alves contacted the Stoughton Police Department to inquire of the status of his LTC application. He was again told that the Coronavirus was to blame for the delay in processing licenses.

37. On July 24, 2020, Mr. Alves contacted the FRB to inquire of the status of his LTC application. He was told that the FRB had not received his application from the Stoughton Police Department.

38. On September 28, 2020, Mr. Alves again contacted the FRB asking if they had received any information about his application. He was told no.

39. On information and belief, Chief McNamara failed to forward a copy of Mr. Alves' application and fingerprints to the colonel of the State Police within seven days of the receipt of his completed application.

40. Chief McNamara did not issue a LTC or deny the application within 40 days of the receipt of Mr. Alves completed application.

41. Chief McNamara has not issued a LTC or denied Mr. Alves application as of the date of the filing of this complaint.

**INJURY TO PLAINTIFF NICHOLAS BERNAT**

42. On August 25, 2020, Plaintiff Nicholas Bernat completed his LTC application and has been

trying, unsuccessfully, to get the Weymouth Police Department to process it.

43. On August 25 and August 26, Mr. Bernat left voicemail messages with the Weymouth Police Department inquiring as to the steps required to process his application. He received no response.

44. The Weymouth PD website states that "All applications are processed & submitted for review in person by appointment only. To make your appointment, please call 781-340-5059".

45. On August 28, 2020, Mr, Bernat again called the Weymouth Police Department and spoke with Officer Edward Chase who told him to come to the police station on Wednesday, February 19, 2021, at 9am to be fingerprinted.

**46.** The Weymouth PD has so far refused to process Mr. Bernat's application.

## INJURY TO PLAINTIFF NATHAN PIERCE

47. On July 19, 2020, Plaintiff Nathan Pierce completed an LTC application and has been trying, unsuccessfully, to submit his application to the Cambridge Police Department.

48. The Cambridge Police Website contains the following notice:

> NOTICE: Due to COVID-19, the Cambridge Police Records Unit will be open to members of the public by appointment only. Appointments can be made by phone at 617-349-3336 and hours are Monday-Thursday from 8:30 a.m. to 5 p.m. *No fingerprint services are available at this time*. Requests for general assistance, applications and License to Carry (LTC) renewals can be made by email: RecordsE-Mail@cambridgepolice.org.

49. The City of Cambridge is refusing to fingerprint firearms license applicants.

50. The licensing statute requires that the licensing authority forward fingerprints to the colonel of the state police for processing.

51. Mr. Pierce is unable to submit a firearms application, as the police are refusing to process

fingerprints.

## CAUSE OF ACTION FOR DEPRIVATION OF CIVIL RIGHTS 42 U.S.C. § 1983

52. Defendants' acts refusing to process firearms license applications operate to completely prohibit law-abiding individuals from lawfully acquiring and possessing firearms for the purpose of protecting one's self and family (or indeed, for any other lawful purpose).

53. States and localities do not have the power to prohibit the keeping and bearing of arms, nor to close off the channels of licensing by which people obtain firearms and ammunition.

54. The Defendant's policies, practices, customs and enforcement actions related to them, have and continue to directly or effectively prohibit the Plaintiff, and other similarly situated members of the public from possessing firearms, thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

## PRAYER

WHEREFORE, Plaintiffs pray for the following relief:

i. A declaratory judgment that defendants' refusal to process firearms license applications prevents the lawful possession of firearms and thus violate the Second and Fourteenth Amendments;

ii. a preliminary and/or permanent injunction restraining Defendant and his officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from refusing to process firearms applications;

iii. such other and further relief, including injunctive relief, against the Defendant, as may be

        necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

iv.    attorney's fees and costs (including incidental costs such as expert witness fees) pursuant to 42 U.S.C. § 1988 and any other applicable law.

Dated: October 27, 2020

Respectfully submitted,

The plaintiffs,

By their attorney,

 /s/ J. Steven Foley
J. Steven Foley

BBO # 685741
Law Office of J. Steven Foley
100 Pleasant Street #100
Worcester, MA 01609
Tel: 508.754.1041
Fax: 508.739.4051
JSteven@attorneyfoley.com