UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRANDON ALVES;NICHOLAS BERNAT;<br>DOMINIC HAWKINS;VICTORIA COSTA;<br>GENE HULL;JARRAD BROOKS;<br>DANIEL RANAHAN;ALEJANDRO PIREZ;<br>MICHAEL PETERSON;SAWANDI CASSELL;<br>ROBERT BISSONNETTE;ANDREW SEBRING;<br>SECOND AMENDMENT FOUNDATION, INC.;<br>COMMONWEALTH SECOND AMENDMENT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>DONNA M. MCNAMARA,in her official capacity as Police Chief of the Town of Stoughton; RICHARD FULLER, in his official capacity as the Chief of Police of Weymouth; EMANUEL C. GOMES, in his official capacity as acting police chief of the city of Brockton; DAVID SHOEMAKER, in his official capacity as police chief of the town of Warwick; BRANVILLE G. BARD, JR., in his official capacity as Police Commissioner for the City of Cambridge; THOMAS GAMMEL, in his official capacity as police chief of the town of Lunenburg; DAVID JONES, in his official capacity as interim police chief of the town of Hingham; WILLIAM G. GROSS, in his official capacity as police commissioner of the city of Boston; SCOTT LABONTE, in his official capacity as police chief of the town of Berkley; BRIAN KYES, in his official capacity as police chief of the town of Chelsea; NEIL F. OUELLETTE, in his official capacity as police chief of the town of Danvers; MARK SAVASTA, in his official capacity as police chief of the town of Paxton,<br><br>Defendants. | Civil Action No.<br><br>1:20-cv-11933-DPW |

**FIRST AMENDED COMPLAINT**

Plaintiffs allege as follows:

1. This lawsuit alleges that each Defendant has adopted a policy, custom or practice of suspending the processing of firearms license applications during the COVID-19 State of Emergency,

declared by the Governor of Massachusetts.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 1983.

3. This Court has personal jurisdiction over the Defendant because he has acted, acts and threatens to act under the color of laws, policies, customs and/or practices of the Commonwealth of Massachusetts and each did so, does so and threatens to do so within the geographic confines of the Commonwealth of Massachusetts.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

5. The Eastern Division is appropriate pursuant to LR 40.1(d)(1)(C) because all parties that reside in the District reside in the Eastern Division.

## PARTIES

6. Plaintiff Brandon Alves ("Alves") is a natural person residing in Stoughton, Norfolk County, in the Commonwealth of Massachusetts.

7. Plaintiff Nicholas Bernat ("Bernat") is a natural person residing in Weymouth, Norfolk County, in the Commonwealth of Massachusetts.

8. Plaintiff Dominic Hawkins ("Hawkins") is a natural person residing in Brockton, Plymouth County, in the Commonwealth of Massachusetts.

9. Plaintiff Victoria Costa ("Costa") is a natural person residing in Warwick, Franklin County, in the Commonwealth of Massachusetts.

10. Plaintiff Gene Hull ("Hull") is a natural person residing in Cambridge, Middlesex County, in

the Commonwealth of Massachusetts.

11. Plaintiff Thomas Alborough ("Alborough") is a natural person residing in Bellingham, Norfolk County, in the Commonwealth of Massachusetts.

12. Plaintiff Jarrad Brooks ("Brooks") is a natural person residing in Lunenbueg, Worcester County, in the Commonwealth of Massachusetts.

13. Plaintiff Daniel Ranahan ("Ranahan") is a natural person residing in Hingham, Plymouth County, in the Commonwealth of Massachusetts.

14. Plaintiff Alejandro Pirez ("Pirez") is a natural person residing in Boston, Suffolk County, in the Commonwealth of Massachusetts.

15. Plaintiff Michael Peterson ("Peterson") is a natural person residing in Berkley, Bristol County, in the Commonwealth of Massachusetts.

16. Plaintiff Sawandi Cassell ("Cassell") is a natural person residing in Chelsea, Suffolk County, in the Commonwealth of Massachusetts.

17. Plaintiff Robert Bissonnette ("Bissonnette") is a natural person residing in Danvers, Essex County, in the Commonwealth of Massachusetts.

18. Plaintiff Andrew Sebring ("Sebring") is a natural person residing in Paxton, Worcester County, in the Commonwealth of Massachusetts.

19. Plaintiff SECOND AMENDMENT FOUNDATION, INC. ("SAF") is a not-for profit corporation organized under Washington law with its principle office in King County, Washington.

20. Defendant Donna M. McNamara ("Chief McNamara") is sued in her official capacity as the

Police Chief of the town of Stoughton, responsible for general law enforcement functions within the town of Stoughton, including administration of firearms licensing. Her business address is Stoughton Police Department, 26 Rose St, Stoughton, MA 02072

21. Defendant Richard Fuller ("Chief Fuller") is sued in his official capacity as the Police Chief of the town of Weymouth, responsible for general law enforcement functions within the town of Weymouth, including administration of firearms licensing. His business address is Weymouth Police Department, 140 Winter St, Weymouth, MA 02188.

22. Defendant Emanuel C. Gomes ("Acting Chief Gomes") is sued in his official capacity as the Police Chief of the city of Brockton, responsible for general law enforcement functions within the city of Brockton, including administration of firearms licensing. His business address is Brockton Police Department, 7 Commercial St, Brockton, MA 02302.

23. Defendant David Shoemaker ("Chief Shoemaker") is sued in his official capacity as the Police Chief of the town of Warwick, responsible for general law enforcement functions within the town of Warwick, including administration of firearms licensing. His business address is Warwick Police Department, 12 Athol Rd, Warwick, MA 01378.

24. Defendant Branville G. Bard ("Commissioner Bard") is sued in his official capacity as the Police Commissioner of the city of Cambridge, responsible for general law enforcement functions within the city of Cambridge, including administration of firearms licensing. His business address is Cambridge Police Department, 125 Sixth Street Cambridge MA 02142.

25. Defendant Thomas Gammel ("Chief Gammel") is sued in his official capacity as the Police Chief of the town of Lunenburg, responsible for general law enforcement functions within the town of Lunenburg, including administration of firearms licensing. His business address is Lunenburg Police Department, 655 Massachusetts Ave, Lunenburg, MA 01462.

26. Defendant David Jones ("Interim Chief Jones") is sued in his official capacity as the Interim Police Chief of the town of Hingham, responsible for general law enforcement functions within the town of Hingham, including administration of firearms licensing. His business address is Hingham Police Department, 212 Central St, Hingham, MA 02043.

27. Defendant William G. Gross ("Commissioner Gross") is sued in his official capacity as the Police Chief of the town of Boston, responsible for general law enforcement functions within the town of Boston, including administration of firearms licensing. His business address is Boston Police Department, 1 Schroeder Plaza, Boston, MA 02120.

28. Defendant Scott Labonte ("Chief Labonte") is sued in his official capacity as the Police Chief of the town of Berkley, responsible for general law enforcement functions within the town of Berkley, including administration of firearms licensing. His business address is Berkley Police Department, 3 N Main St, Berkley, MA 02779.

29. Defendant Brian Kyes ("Chief Kyes") is sued in his official capacity as the Police Chief of the town of Chelsea, responsible for general law enforcement functions within the town of Chelsea, including administration of firearms licensing. His business address is Chelsea Police Department, 19 Park St, Chelsea, MA 02150.

30. Defendant Neil F. Ouellette ("Chief Ouellette") is sued in his official capacity as the Police Chief of the town of Danvers, responsible for general law enforcement functions within the town of Danvers, including administration of firearms licensing. His business address is Danvers Police Department, 120 Ash St, Danvers, MA 01923.

31. Defendant Mark Savasta ("Chief Savasta") is sued in his official capacity as the Police Chief of the town of Paxton, responsible for general law enforcement functions within the town of Paxton, including administration of firearms licensing. His business address is Paxton Police

Department, 576 Pleasant Street, Paxton, MA 01612.

## CONSTITUTIONAL PROVISIONS

32. The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

33. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

34. The Fourteenth Amendment to the United States Constitution provides in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

35. The Second Amendment "is fully applicable to the States." *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *see also id*. at 805 (Thomas, J., concurring)

36. The "core lawful purpose" of the right to keep and bear arms is "self-defense." *Heller*, 554 U.S. at 571, 630; *accord McDonald*, 561 U.S. at 767-68.

37. The Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635.

## PERTINENT STATUTES AND REGULATIONS

38. In Massachusetts, it is unlawful to "own or possess" any handgun, rifle or shotgun unless one holds either a Firearms Identification card ("FID") or a License to Carry Firearms ("LTC"). *See* M.G.L. c. 140, §§ 129B-129C; id. c. 269, § 10(a,h).

39. It is also illegal to possess "ammunition" unless one holds either an FID or LTC. *See* M.G.L. c. 140, §§ 129B-129C; *id*. c. 269, § 10(h).

40. A person seeking an FID or LTC must meet specified requirements related to, inter alia, age, criminal background, and mental fitness. *See* M.G.L. c. 140, § 129B(1)(i)-(xi); *id*. § 131(d)(i)-(x). Furthermore, licensing authorities can deny FIDs and LTCs to individuals found to be "unsuitable" in that they otherwise "create a risk to public safety." *See id*. § 129B(1)(b), (d); *id*. § 131(d). Finally, a person must also complete state mandated training. *See id*. at § 131P(a).

41. It is unlawful for any person to sell a handgun to any person without a License to Carry Firearms or both an FID Card and a Permit to Purchase. *See* M.G.L. c. 140, § 129C.

42. On information and belief, the Commonwealth of Massachusetts has not issued a Permit to Purchase in over 20 years.

43. Persons seeking a License to Carry or FID Card may submit an application to the local licensing authority. *See* M.G.L. c. 140, §131(d), §129B(1).

44. There are no provisions in the law that permit a licensing authority to refuse to accept and process firearms license applications.

45. The firearms licensing process in the Commonwealth requires the licensing authority to forward one copy of the application and one copy of the applicant's fingerprints to the colonel of state police within seven days of the receipt of a completed application. *See* M.G.L. c. 140, §131(e), §129B(2).

46. The firearms licensing process in the Commonwealth requires the colonel of the state police to advise the licensing authority within 30 days of any disqualifications to licensing. *See* M.G.L. c. 140, §131(e), §129B(2).

47. On information and belief, the Firearms Records Bureau ("FRB") acts as the agent of the colonel of the state police with regards to firearms licensing processing.

48. The firearms licensing process in the Commonwealth requires the licensing authority to process an application within 40 days. *See* M.G.L. c. 140, §131(e), §129B(2).

### GOVERNOR BAKER'S EXECUTIVE ORDERS

49. In March of 2020, Massachusetts Governor Charles Baker declared a state of emergency in response to the COVID-19 outbreak and subsequently issued orders forcing "[a]ll businesses and other organizations that do not provide COVID-19 Essential Services [to] close their physical workplaces and facilities ('brick-and-mortar premises') to workers, customers, and the public". Since then various steps have been taken to reopen businesses and other organizations.

50. Nothing in the Governor's COVID orders require or permit a licensing authority to refuse to accept and process firearms license applications.

### INJURY TO PLAINTIFF BRANDON ALVES

51. Mr. Alves contacted the Stoughton Police department on January 20, 2020, to make an appointment to submit his LTC application.

52. In February of 2020, Mr. Alves submitted his completed application to the Stoughton Police Department and was fingerprinted.

53. On May 7, 2020, Mr. Alves contacted the Stoughton Police Department to inquire of the status of his LTC application. He was told the process was delayed due to the Coronavirus.

54. On June 13, 2020, Mr. Alves contacted the Stoughton Police Department to inquire about the status of his LTC application. He was told to call back when the Chief McNamara was available and that the Coronavirus was to blame for the delay in processing licenses.

55. On June 19, 2020, Mr. Alves contacted the Stoughton Police Department to inquire about the status of his LTC application. He was again told that the Coronavirus was to blame for the delay in processing licenses.

56. On July 24, 2020, Mr. Alves contacted the FRB to inquire about the status of his LTC application. He was told that the FRB had not received his application from the Stoughton Police Department.

57. On September 28, 2020, Mr. Alves again contacted the FRB asking if they had received any information about his application. He was told no.

58. Chief McNamara has adopted a policy, custom, or practice of not forwarding applications and fingerprints to the colonel of the State Police within seven days of the receipt of a completed application.

59. Chief McNamara has adopted a policy, custom, or practice of not issuing LTCs or denying LTC applications.

60. Chief McNamara has not issued an LTC to or denied Mr. Alves application as of the date of the filing of this amended complaint.

## INJURY TO PLAINTIFF NICHOLAS BERNAT

61. On August 25, 2020, Plaintiff Nicholas Bernat completed his LTC application and has been trying, unsuccessfully, to get the Weymouth Police Department to process it.

62. On August 25 and August 26, Mr. Bernat left voicemail messages with the Weymouth Police Department inquiring about the steps required to process his application. He received no response.

63. The Weymouth PD website states that "All applications are processed & submitted for review

in person by appointment only. To make your appointment, please call 781-340-5059."

64. On August 28, 2020, Mr. Bernat again called the Weymouth Police Department and spoke with Officer Edward Chase who told him to come to the police station on Wednesday, February 19, 2021, at 9am to be fingerprinted.

65. On November 27, 2020, The Weymouth Police called Mr. Bernat and told him he could come in for fingerprinting.

66. On November 28, 2020, The Weymouth Police fingerprinted Mr. Bernat.

67. As of the filing of this amended complaint, The Weymouth Police Department has not issued Mr. Bernat's License.

68. The Weymouth Police Department has adopted a policy, custom, or practice of not processing firearms applications.

69. The Weymouth Police Department has so far refused to process Mr. Bernat's application.

### INJURY TO PLAINTIFF DOMINIC HAWKING

70. On October 11, 2020, Dominic Hawking submitted his LTC application to the Brockton Police Department by hand-delivering it to the station.

71. On October 13, 2020, Hawking received an email from Officer Alfred Gazerro advising him that "(d)ue to the current pandemic as well as the as well as the overwhelming increase of LTC/FID requests, the Brockton Police Department is currently not taking appointments for or accepting NEW LTC/FID applications for 2020 and will start accepting new applications after the new year."

72. As of the filing of this amended complaint, the Brockton Police Department has not issued

Hawking's License to Carry Firearms.

73. The Brockton Police Department has adopted a policy, custom, or practice of not processing firearms applications.

74. The Brockton Police Department has so far refused to process Mr. Hawking's application.

## INJURY TO PLAINTIFF VICTORIA COSTA

75. Victoria Costa completed her basic firearms safety course in March 2020, and looked into the process for applying for an LTC with the Warwick Police Department. She learned at that time through a posting on the Warwick Police Department Official Facebook Page that firearms licenses were not being processed due to COVID-19.

76. Costa continued to check the Warwick Police Department Official Facebook Page for updates on firearms licensing.  There have been no updates indicating that firearms licensing has been restarted for new LTC applicants.

77. On November 27, 2020, an update was posted on the Warwick Police Department Official Facebook Page stating that they "are processing firearm permit renewals only at this time. New applications require fingerprinting and because of CDC guidelines as well as advice from health officials the police station is closed to the public."

78. As of the date of filing of this amended complaint, the Warwick Police Department has not accepted or processed Costa's LTC application.

79. The Warwick Police Department has adopted a policy, custom, or practice of not processing firearms applications.

80. The Warwick Police Department has so far refused to process Ms. Costa's application.

## INJURY TO PLAINTIFF GENE HULL

81. Gene Hull contacted the Cambridge Police Department via email on August 25, 2020, and requested information about submitting his application for an LTC. Hull received a response to his email later that day from Lieutenant Antonio Ayala stating that "(d)ue to the COVID 19 declared emergency, we are not currently processing new applications for LTC [sic]."

82. Hull contacted Lt. Ayala again via email on September 18, 2020, requesting information about when LTC applications will be accepted again.

83. To date, Hull has not received a response to his inquiry or received notice of an appointment and is unable to submit an LTC application to the Cambridge Police Department.

84. The Cambridge Police Department has adopted a policy, custom, or practice of not processing firearms applications.

85. The Cambridge Police Department has so far refused to process Hull's application.

## INJURY TO PLAINTIFF THOMAS ALBOROUGH

86. Thomas Alborough contacted the Bellingham Police Department by phone on two separate occasions in November 2020. On both occasions Alborough was told that firearms licensing applications are not currently being processed because of COVID-19 and that he should "try again next week."

87. On November 11, 2020, Alborough went to the Bellingham Police Department with recently published guidance from the Commonwealth of Massachusetts about how fingerprints can be processed for firearms licensing during COVID. Alborough was not able to get past the intercom at the front door. Alborough was told that licenses were not being processed and that the licensing officer was not available.

88. The Bellingham Police Department has adopted a policy, custom, or practice of not processing firearms applications.

89. The Bellingham Police Department has so far refused to process Alborough's application.

### INJURY TO PLAINTIFF JARRAD BROOKS

90. On November 6, 2020, Jarrad Brooks received notice that his LTC is set to expire in March and that he needs to reapply.

91. On November 9, 2020, Brooks contacted the Lunenburg Police Department and asked about scheduling an appointment to submit his renewal application. He was told that the officer who processes applications would call him back.

92. Brooks did not receive a return call from the Lunenburg Police Department, so he appeared at the Department in person on November 24, 2020. The doors to the Department were locked. He tried calling the Department and was told that the licensing officer was not there and that he needed to speak with her.

93. Brooks attempted to call the licensing officer on December 1, 2020, and no one answered the phone.

94. The Lunenburg Police Department has adopted a policy, custom, or practice of not processing firearms applications.

95. The Lunenburg Police Department has so far refused to process Brooks's application.

### INJURY TO PLAINTIFF DANIEL RANAHAN

96. Daniel Ranahan contacted the Hingham Police Department in November 2020, to set up an appointment to submit an application for an LTC. He was told that he needed to sign up for an

appointment on the Hingham Police Department website.

97. Ranahan checked the website in November and discovered that all of the appointments were full and that scheduling for December would begin on December 1st.

98. Ranahan set his alarm for 12:05 am on December 1, 2020, and attempted to schedule a licensing appointment on the Hingham Police Department website. There was no schedule listed at that time for December. He checked again at 3 am, 4 am, and 5 am and there was still no schedule listed for December.

99. Ranahan checked the Hingham Police Department website at 7:30 am on December 1, 2020, and discovered that a schedule for December was listed with approximately 35 total licensing appointment sessions. All of the appointment sessions were listed as filled, and there were no open sessions available.

100. The Hingham Police Department has adopted a policy, custom, or practice of not processing firearms applications.

101. The Hingham Police Department has so far refused to process Ranahan's application.

## INJURY TO PLAINTIFF ALEJANDRO PIREZ

102. Alejandro Pirez contacted the Boston Police Department in May, 2020, to set up an appointment to submit an application for an LTC. Pirez was told that he was put on a "wait list" for an appointment.

103. Pirez contacted the Boston Police Department in September, 2020 and was told that he would receive an email when his appointment is scheduled.

104. Pirez has been waiting over 6 months for an appointment and still has not received a notice of an appointment.

105. The Boston Police Department has adopted a policy, custom, or practice of not processing firearms applications.

106. The Boston Police Department has so far refused to process Pirez's application.

### INJURY TO PLAINTIFF MICHAEL PETERSON

107. Michael Peterson contacted the Berkley Police Department on November 27, 2020, to set up an appointment to submit an application for an LTC.

108. Peterson was advised by an officer at the Berkley Police Department that his application would not be accepted and that firearms licensing is no longer being conducted because of "everything going on."

109. On November 17, 2020, Tte Berkley Police Department posted on social media that all new LTC applications are suspended until further notice.

110. The Berkley Police Department has adopted a policy, custom, or practice of not processing firearms applications.

111. The Berkley Police Department has so far refused to process Peterson's application.

### INJURY TO PLAINTIFF SAWANDI CASSELL

112. Sawandi Cassell submitted an application for an LTC to the Chelsea Police Department in mid-July.  Cassell contacted the Chelsea Police Department numerous times over the past several months to check the status and has received no information.

113. Cassell contacted the Massachusetts Firearms Records Bureau and was informed that the Chelsea Police Department has not even started the application.

114. In November Cassell went to the Chelsea Police Department and spoke with the Detective in

charge of firearms licensing. Cassell was told that there was a "whole pile of applications" and that Cassell's was "probably in there somewhere."

115. Cassell was told that it may be "up to a year" before the application will be processed.

116. The Chelsea Police Department has adopted a policy, custom, or practice of not processing firearms applications.

117. The Chelsea Police Department has so far refused to process Cassell's application.

### INJURY TO PLAINTIFF ROBERT BISSONNETTE

118. Robert Bissonnette attempted to submit an application for an LTC with the Danvers Police Department in mid-October. Bissonnette discovered that the Danvers Police Department only accepts applications on scheduled days during certain time slots and that there were no slots available in October.

119. Bissonnette contacted the Danvers Police Department and spoke with the firearms licensing officer. Bissonnette was advised that there were no slots available and that Bissonnette would have to wait until November. Bissonnette was also told that there is only one detective assigned to process license applications.

120. In early November Bissonnette attempted to submit an application for an LTC again. The Danvers Police Department reserved 2 dates in November for a total of 7 hours. Bissonnette discovered, once again, that all of these timeslots were filled and that Bissonnette would need to wait until December.

121. Bissonnette attempted to submit an application for an LTC on December 3, 2020, a scheduled day for licensing at the Danvers Police Department. When Bissonnette arrived around 2 pm, Bissonnette was turned away and advised that the licensing officer was out.

122. Bissonnette returned to the Danvers Police Department on December 9, 2020 and Bissonnette's application was accepted.  However, Bissonnette has learned, through social media posts, that the Danvers Police Department has stopped the processing of firearms licenses until January.

123. The Danvers Police Department has adopted a policy, custom, or practice of not processing firearms applications.

124. The Danvers Police Department has so far refused to process Bissonnette's application.

### INJURY TO PLAINTIFF ANDREW SEBRING

125. In mid-November, Andrew Sebring contacted the Paxton Police Department and spoke with the person who handles firearms license applications.

126. Sebring was advised that the Paxton Police Department was not currently accepting firearms license applications because the Department is unable to process the license application fee due to COVID-19.

127. Sebring was not provided with an estimate as to when the processing of firearms licenses would begin again.

128. Sebring is unable to apply for an LTC because the Paxton Police Department will not accept Sebring's application.

129. The Paxton Police Department has adopted a policy, custom, or practice of not processing firearms applications.

130. The Paxton Police Department has so far refused to process Sebring's application.

### INJURY TO ORGANIZATIONAL PLAINTIFFS

131. Plaintiff Second Amendment Foundation, Inc. ("SAF") has over 650,000 members and

supporters nationwide, including in the Commonwealth of Massachusetts. All of the individual plaintiffs are members of SAF. The purposes of SAF include promoting both the exercise of the right to keep and bear arms and education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms. SAF also promotes research and education on the consequences of abridging the right to keep and bear arms and on the historical grounding and importance of the right to keep and bear arms as one of the core civil rights of United States citizens. SAF brings these claims on its own behalf and on behalf of its members.

132. Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a nonprofit organization recognized under § 501(c)(3) of the Internal Revenue Code. The purposes of Comm2A include education, research, publishing, and legal action focusing on the constitutional right of the people to possess and carry firearms. Comm2A has members and supporters throughout (and beyond) Massachusetts, including all of the individual plaintiffs. Comm2A brings this action on its own behalf and on behalf of its members.

## CAUSE OF ACTION FOR DEPRIVATION OF CIVIL RIGHTS 42 U.S.C. § 1983

133. Defendants' acts refusing to accept and process firearms license applications have the effect of completely prohibiting law-abiding individuals from lawfully acquiring and possessing firearms for the purpose of protecting one's self and family (or indeed, for any other lawful purpose).

134. States and localities do not have the power to prohibit the keeping and bearing of arms—nor to close off the channels of licensing by which people obtain firearms and ammunition.

135. The Defendant's policies, practices, customs and enforcement actions related to them, have and continue to directly or effectively prohibit the Plaintiff, and other similarly situated members of the public from possessing firearms, thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

**PRAYER**

WHEREFORE, Plaintiffs pray for the following relief:

i. A preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from refusing to process firearms applications;

ii. a declaratory judgment that defendants' refusal to process firearms license applications prevents the lawful possession of firearms and thus violate the Second and Fourteenth Amendments;

iii. such other and further relief, including injunctive relief and nominal damages, against the Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

iv. attorney's fees and costs (including incidental costs such as expert witness fees) pursuant to 42 U.S.C. § 1988 and any other applicable law.

Dated:   January 20, 2021

Respectfully submitted,

The plaintiffs,

By their attorney,

 /s/ J. Steven Foley
J. Steven Foley

BBO # 685741
Law Office of J. Steven Foley
51 Union St #118
Worcester, MA 01608
Tel: 508.754.1041
Fax: 508.739.4051
JSteven@attorneyfoley.com